THE STATE OF IOWA, EX REL. MARSH W. BAILEY v. S. W. BROOKHART, Respondent, Appellant.

Constitutional Law: AMENDMENTS TO CONSTITUTION: *Validity.* Constitution, Article 10, section 1, provides that an amendment to the Constitution may be proposed in either house of the general assembly, and, if agreed to by a majority of the members of each house, and entered on their journals, shall be referred to the next legislature, and, if there agreed upon, it shall be submitted to a vote of the people. An amendment to the Constitution designated as "Article 12, section 16," providing for biennial instead of annual elections and extending the term of certain officers, was proposed and agreed to by the senate, and was entered in full in the senate journal and was passed in the house, but was only entered in the journal of the house by its title. *Held*, that the failure of the house to enter the proposed amendment in full in its journal rendered the amendment invalid.

Stare Decisis: DICTUM DEFINED. Where several objections to the validity of a constitutional amendment are raised by the issues, and are held as valid grounds for denying its validity by the trial court, and its rulings thereon are assigned as error, and are specifically considered on appeal, the decision is authoritative and not dictum, as to each objection.

*Appeal from Washington District Court.*—HON. A. R. DEWEY, Judge.

FRIDAY, FEBRUARY 1, 1901.

On application to the lower court, relator was granted leave to bring an action in the name of the state to test his right to the office of county attorney, to which he claimed to have been duly chosen at the general election on Novem-

ber 6, 1900, and to oust defendant therefrom, alleging that the defendant, who was the lawful incumbent of said office prior and up to the first Monday (the 7th) of January, 1901, claimed the right to continue to hold said office under the provisions of an alleged amendment to the constitution of the state. Defendant's demurrer to plaintiff's petition was overruled, and from this ruling defendant appeals.— *Affirmed.*

*S. W. Brookhart,* pro se.

*Marsh W. Bailey* for appellee.

By permission of the court arguments were filed by attorneys not of record in the case, as follows: *George C. Scott, C. A. Irwin, G. W. Lafferty, W. R. Lewis, G. M. Titus* and *A. B. Cummins.* Oral arguments, in addition to those of the attorneys of record, were made by *A. B. Cummins, Milton Remley,* and *C. A. Irwin.*

PER CURIAM.—The controversy in this case arises under the provisions of what purports to be an amendment to the constitution of the state, designated as "section 16, of article 12," which reads as follows: "Sec. 16. The first general election after the adoption of this amendment shall be held on the Tuesday next after the first Monday in November in the year one thousand nine hundred and two, and general elections shall be held biennially thereafter. In the year one thousand nine hundred and two there shall be elected a governor, lieutenant-governor, secretary of state, auditor of state, treasurer of state, attorney general, two judges of the supreme court, the successors of the judges of the district court whose terms of office expire December 31st, one thousand nine hundred and two, state senators who would otherwise be chosen in the year one thousand nine hundred and one, and members of the house of representatives. The terms of office of the judges of the supreme court

which would otherwise expire in odd-numbered years, and all other elective state, county and township officers whose terms of office would otherwise expire in the year one thousand nine hundred and one, and members of the general assembly whose successors would otherwise be chosen at the general election in the year one thousand nine hundred and one, are hereby extended one year and until their successors are elected and qualified. The terms of office of senators whose successors would otherwise be chosen in the year one thousand nine hundred and three, are hereby extended one year and until their successors are elected and qualified. The general assembly shall make such changes in the law governing the time of election and terms of office of all other elective officers as shall be necessary to make the time of their election and terms of office conform to this amendment, and shall provide which of the judges of the supreme court shall serve as chief justice. The general assembly shall meet in regular session on the second Monday in January, one thousand nine hundred and three, and biennially thereafter."

Such amendment was proposed in the senate of the twenty-seventh general assembly (1898) by a joint resolution named and entitled "Substitute for substitute for joint resolution No. 1. Joint resolution proposing to amend the constitution of the state of Iowa so as to provide for biennial elections"; which resolution was entered in full on the senate journal, the yeas and nays being duly recorded in said journal, and then (as claimed) was transmitted to the house, where something under the same name and title, referred to by name and title only, appears to have been passed, the yeas and nays being duly recorded on said journal. The same resolution was agreed to by the senate and the house of the twenty-eighth general assembly (1900), and the proposed amendment was duly submitted to the people at the general election of 1900 (November 6th), and received the affirmative votes of a majority of the voters voting thereon. The foregoing account of the proceedings relating to the proposal

and adoption of the alleged amendment is sufficiently full
to serve as a basis for the consideration of the questions
herein discussed.    Objection was made in the lower court
and is insisted upon in this court that the record of the
twenty-seventh general assembly relating to the transmission
to the house of the senate resolution does not correctly de-
scribe that resolution.    It is there referred to as "Substitute
for joint resolution No. 1," whereas in fact, as it passed the
senate, and was entered in full on its journal, it was a "Sub-
stitute for a substitute for joint resolution No. 1," but the
subsequent entries on the house journal with reference to the
action of the committee reporting it for passage and as to its
final passage by the house correctly describe it, and we shall
treat the proposed amendment as having been entered in full
on the senate journal and entered by title on the house jour-
nal, there being no claim that it was at any time entered in
full on the journal of the house.    Under these facts two
questions are presented for our consideration:    First.    Was
the amendment proposed and adopted in conformity with
the requirements of our constitution?    Second.    Does such
amendment, if it is a part of the constitution, extend the
term of office of defendant?

To a correct understanding of the difficulties involved in
the second question it is proper to say that, without the
amendment, the statutes of the state provide for annual gen-
eral elections, at each of which some state, county, and other
officers are chosen, and that, in view of the proposal in the
amendment to omit any general election in 1901, and each
second year thereafter, it was proper to provide for the occu-
pancy of the offices which would otherwise have been filled
by elections held in those years, and the method adopted
seems to have been to extend the terms of office of certain
judges of the supreme and district courts, certain senators,
and all the members of the lower house of the general as-
sembly, and certain state, county, and other officers that need
not be here specifically named.    By constitutional provision

(article 5, section 11), the terms of office of the judges of the supreme and district courts commence on the first day of January, and terminate, therefore, on the last day of December, and as to these there is no difficulty in applying the amendment; but by the provisions of the Code, section 1060, the terms of state, county, and other officers chosen at the general election commence on the first Monday in January after their election (except in case of the governor and lieutenant governor, as to which see article 4, section 15) and by various constitutional and statutory provisions, which need not be specifically cited, all these officers hold office until their successors are duly elected and qualified. If the defendant, and other officers whose terms would otherwise expire on January 6, 1901, are the officers whose terms would be extended by the provisions of the amendment, then relator and other state, county, and minor officers chosen at the general election in November, 1900, will not be entitled to hold office during the year 1901. Relator contends for a construction of the amendment which will make the extension of terms of office therein contemplated apply to those whose successors would otherwise be chosen at the general election in 1901, when, by the provision of the amendment, no such officers would be chosen.

I. We address ourselves now to the first question, to-wit, whether the proposed amendment has been so proposed and adopted as to be a part of the constitution. The provisions of section 1, article 10, of the constitution, with reference to its amendment, are as follows: "Section 1. Any amendment or amendments to this constitution may be proposed in either house of the general assembly; and if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment shall be entered on their journals, with the yeas and nays taken thereon, and referred to the legislature to be chosen at the next general election, and shall be published, as provided by law, for three months previous to the time of making such

choice; and if, in the general assembly so next chosen as aforesaid, such proposed amendment or amendments shall be agreed to by a majority of all the members elected to each house, then it shall be the duty of the general assembly to submit such proposed amendment or amendments to the people in such manner and at such time as the general assembly shall provide; and if the people shall approve and ratify such amendment or amendments by a majority of the electors qualified to vote for members of the general assembly, voting thereon, such amendment or amendments shall become a part of the constitution of this state." The question, briefly stated, is whether it is necessary that the proposed amendment shall be entered in full on the journal of each house of the general assembly by which it is first proposed and adopted, or whether the entry on one or both of such journals may be by title, or by other method of identification. Similar questions have arisen under the constitutions of other states, and the decisions of the courts of such states have not been entirely harmonious. But in *Koehler v. Hill*, 60 Iowa, 543, finally decided in 1883, this court had occasion to consider a question arising under the section of the constitution relating to its amendment above set out, and it is important to determine what was there decided with reference to the question now before us. If there are conclusions of the court authoritatively announced in that case which settle the present case, we ought to adhere to them, unless they are manifestly unsound; for in no class of cases coming before us ought we to so carefully guard against vacillation and uncertainty as in cases which involve a construction of the fundamental law of the state,. especially if the rule of construction announced has stood for many years unquestioned in this court, and may be presumed to have been the rule in accordance with which intervening legislative action, including the submission of the amendment under consideration, has been taken. In the *Koehler Case* was involved the question whether the so-called

prohibitory amendment had become a part of the constitution, and among the objections to it which were considered in the opinions of the judges was the very objection now raised,—that the proposed amendment had not been entered ·upon the journals of the two houses of the eighteenth general assembly, in which that amendment was first proposed. Other questions were raised in that case, and fully considered by the court. Its jurisdiction to pass on the validity ·of the proposed amendment was very fully considered, and such jurisdiction was sustained. The court also addressed itself to the contention that the resolution, with the official entries thereon showing its passage by the eighteenth general assembly, was conclusive as to the .regularity of the proceedings; and after elaborate consideration such contention was overruled. The court also overruled the contention that the action of the nineteenth general assembly, reciting the adoption of the resolution by the eighteenth general as·sembly, was conclusive as to the regularity of the prior action. It also found that the amendment set forth in the res·olution which passed the eighteenth general assembly, and was entered in full on its journal, contained certain words not found in the amendment as adopted by the nineteenth general assembly, and submitted to the voters; and it decided that this defect was fatal, and that on this account the amendment which was voted upon did not become a part of the constitution. It is now contended that these were the points really decided and the decision of them determined the result of the case, and, therefore, what was said as to the point now before us was dictum; that is, in the language quoted by counsel for appellant, and made his own, "an observation by a judge on a legal question suggested by the case before him, but not arising in such a·manner as to require decision," and therefore not binding ·as a precedent upon other judges, "although it may be entitled to more or less respect." The objection to giving great weight to a dictum is that what is thus stated is beyond the power

of the court to decide, because the court can only adjudicate questions which are before it, and that, as the question was not before the court, what is said is to be understood as having been said without the advantage of argument. See *Cohens v. Virginia,* 6 Wheat. 264, 399, 400 (5 L. Ed. 257); *Frants v. Brown,* 17 Serg. & R. 287, 289; Wambaugh, Study of Cases, section 13. In the early English cases the term is used with reference to random remarks made by a judge at *nisi prius,* not embodying his ruling on any question presented to him. See *Saunderson v. Rowles,* 4 Burr. (K. B.); 2064, 2068; *Steel v. Houghton,* 1 H. Bl. 51, 53; *Parton v. Williams,* 3 Barn. & Ald. 339, 341. But by no authority is the expression of the views of the court on a question in the case regarded as dictum. *Rohrback v. Insurance Co.,* 62 N. Y. 47, 58; *Buchner v. Railway Co.,* 60 Wis. 264, 267 (19 N. W. Rep. 56); *State v. Clarke,* 3 Nev. 566, 572; *Clark v. Thomas,* 4 Heisk. (Tenn.), 419, 421; *Alexander v. Worthington,* 5 Md. 471, 488. An examination of the record on which the *Koehler Case* was submitted shows that by the pleadings an issue was plainly raised as to whether it was necessary that the proposed amendment be entered in full on the journals of both houses of the general assembly in which it is first proposed; that, under the evidence, the amendment which was agreed to by the senate of the eighteenth general assembly was not entered in full on the journal of the house of that general assembly (and this failure was not merely as to the four words which were omitted from the proposed amendment as it was submitted to the people); that this was one of the grounds on which the trial court held the amendment not a part of the constitution; that the ruling of the court on this point was assigned as an error; and that this assignment was fully argued by counsel on both sides. In the first opinion of the court in that case, and again in the opinion on rehearing (see pages 556, 638, 60 Iowa), the

conclusion of the court is definitely expressed that the entry on the journals required by the constitution is an entry in full on the journal of each house, and that a reference by title to the resolution proposing the amendment is not sufficient as to either journal. The judge who dissented on the original hearing, and again on the rehearing, treated this question as involved and decided in the majority opinions. See pages 581, 675, 60 Iowa. In each of the cases cited to us from other states involving the same question, and decided since the decision in the *Koehler Case,* that case has been referred to as supporting the contention that entry on the journal means entry in full. See *Paving Co. v. Hilton,* 69 Cal. 479, 507 (11 Pac. Rep. 3); *State v. Tufly,* 19 Nev. 391, 393 (12 Pac. Rep. 835); *State v. Herried* 10 S. D. 109 (72 N. W. Rep 93, 95). These cases are not cited by us as supporting the proposition which we here insist was laid down on this point in the *Koehler Case,* but as showing that the point is considered as having been passed upon by the court in that case. The conclusion, therefore, expressed by this court in the *Koehler C*ase, is not dictum, but is decision, and we must either follow it or overrule it. We consider that, inasmuch as it involves the construction of our own constitution, and has been recognized for many years as making definite and certain the method to be pursued in amending the constitution, it should be followed. And in conclusion, with reference to that case, we consider that it is not for us to determine that of the two questions involved relating to the method of amending the constitution one only was regarded as decided while the other was simply discussed. The conclusion of the court as to either one of these two questions would have determined the case, and one conclusion is as binding upon us as the other. Therefore, following the decision of the court in the *Koehler Case,* we hold that the proposed amendment, not having been entered upon the journal of the house of the Twenty-Seventh General Assembly, was not proposed and adopted as required by our

constitution, and has not become a part thereof.   This con-
clusion makes it unnecessary to discuss the interpretation of
the language of the amendment, and leads to the result that
relator is entitled to the office which he claims.—Affirmed.