In re Estate of Bertha D. Finch.

No. 47182.

(Reported in 32 N. W. 2d 819)

1070

JUNE 15, 1948.

REHEARING DENIED SEPTEMBER 24, 1948.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for Jesse D. Griffith and John N. D. Griffith, appellants and cross-appellees.

Brammer, Brody, Charlton, Parker & Roberts, of Des Moines, for Simon Carey, Iletta Carey Conway, Elizabeth Carey Vargas and Belle Carey McClure, appellants and cross-appellees.

Miller, Davis, Ilise & Howland, Howe & Howe, and Joseph Petosa, all of Des Moines, for Daniel O. Finch and Paul R. Finch, appellees and cross-appellants.

BLISS, J.—The cause was submitted on the pleadings and a stipulation of facts. While none of the facts were disputed certain of them were objected to as irrelevant. It appears therefrom that: Bertha D. Finch, age eighty-eight, died April 10, 1946, a widow without children, natural or adopted, or other

lineal descendants, leaving a last will dated April 9, 1942, and a codicil thereto dated December 15, 1945, both of which were admitted to probate on May 7, 1946; that in 1896 Bertha D. Finch, a spinster, married Daniel M. Finch, a widower with two sons, Paul R., born in 1885, and Daniel O., born in 1887, who are his only heirs; that the marriage relation continued until the death of the husband, Daniel M. Finch, age eighty-eight, on December 31, 1945, without issue; that his will bearing date of January 9, 1925, naming Bertha D. Finch as his sole beneficiary thereunder, was probated and administered upon in Polk County, Iowa; that Jesse D. Griffith, John N. D. Griffith, Simon Carey, Hetta Carey Conway, and Dewey Carey were the only nephews and niece of Bertha D. Finch, and the only sons and daughter of her own sisters at the time of the execution of her will; that Dewey Carey died before the testatrix, survived by his only children, Elizabeth Carey Vargas and Belle Carey McClure, who with the said Jesse D. Griffith, John N. D. Griffith, Simon Carey, and Hetta Carey Conway are the residuary devisees and beneficiaries under the will of Bertha D. Finch; that the value of the net estate of the testatrix is approximately $100,000 of which $60,000 represents personalty and $40,000, real assets; and that the testatrix never remarried.

Those who are appellants in this court offered in the trial court the court file, Exhibit A, in the estate of Daniel M. Finch. The appellees Paul R. and Daniel O. Finch, while admitting the authenticity of the file, objected to its admission as incompetent, irrelevant, and immaterial to any issue under the pleadings or to the questions of law presented thereby. The same objection was made by them to the offer of Exhibit B, the court file in the estate of Bertha D. Finch, except the pleadings in this proceeding and the will and codicil.

It was stipulated, subject to objection, that the relations between Bertha D. Finch and her niece and nephews were always pleasant, cordial, and affectionate, that they frequently visited in the home of the testatrix, and that she and her husband, Daniel, about the year 1942 were guests for two or three weeks in the home of Hetta Carey Conway in California. It was also stipulated, subject to objection, that substantially all of the estate of the testatrix, except the net amount of about

$1600, which she received from the estate of her husband, came to her through inheritance from her mother, Mrs. Hetta Dewey. To all of these offers the appellees objected for the reason that such facts were wholly incompetent, irrelevant, and immaterial under the issues, and had no proper place in the record and no bearing upon any questions of law for decision by the court; that the contrary intent which the residuary devisees were undertaking to show to avoid the effect of section 633.16 of the 1946 Code, must, by the terms of the statute, be manifest from the terms of the will, and that surrounding circumstances such as stipulated and offered had no bearing on the issue presented as to whether or not such contrary intent was manifest under the terms of the will, as specified by said statute.

It was further stipulated that the proceeding was to be tried and determined as an ordinary proceeding in probate and that the burden was upon the residuary devisees and beneficiaries and that rulings upon objections would be reserved until final decision of the case.

The will of the testatrix, after stating the revocation of any prior wills, in substance provides:

"1. I give, devise and bequeath to my husband, Daniel M. Finch, his distributive share of my property as provided by the laws of Iowa.

"2. I give, devise and bequeath to my great nieces * * * [naming six of them] the sum of $100.00 each.

"3. I give, devise and bequeath to Valley Savings Bank, of Des Moines, Iowa, as Trustee all the rest, residue and remainder of my property of every kind and character, whether real, personal or mixed, and wherever situated, for the following purposes: Said Trustee shall take and hold said property, invest and re-invest * * * and do whatever is required for the protection and preservation of the trust property."

Paragraphs 4, 5, and 6 provide in substance that the trust shall continue as long as Daniel M. Finch shall live, and terminate at his death, during which period the trustee "shall pay to my husband, Daniel M. Finch, at such times as he shall require, all of the net income from the trust property remaining after the payment of taxes, insurance premiums, and other

operating costs of the trust" and "Whenever in the opinion of the trustee * * * Daniel M. Finch, shall need any sum in addition to the net income to provide him with a comfortable living, said Trustee shall pay him such additional sums from the principal or corpus of the trust property."

Paragraph 7 provides for reports by the trustee to the court. Paragraph 8 provides:

"8. At the death of my husband, Daniel M. Finch, all the property in the hands of said Trustee, I give, devise and bequeath to all of my nephews and niece, that is, the sons and daughter of my own sisters then living, to be divided among them share and share alike, and such division shall be made per capita and not per stirpes. In the event that any of my nephews and niece shall not survive me, then the share in my property herein provided for such nephew or niece shall go to the heirs of said nephew or niece."

On December 15, 1945 the testatrix executed a codicil to said will providing:

"1. My nephew, Dewey Carey, having died since the execution of my said will, it is my will that the devise and bequest of said will to said Dewey Carey, as one of my nephews, shall go to his, the said Dewey Carey's, daughters, to be divided between them equally.

"2. All provisions of said will shall remain in full force and effect, except as modified by this codicil."

After the probate of the will and codicil and the qualification of the executor, the latter filed an application setting out the provisions of the will, and stating that questions had been raised as to its construction, and asking for an order fixing the time and notice for a hearing thereon. The sons of Daniel M. Finch, deceased, filed an answer admitting the allegations of the application and a cross-petition alleging that they were the only heirs of the devisee, Daniel M. Finch, and under section 633.16, Code, 1946, identical with section 11861, Code of 1939, and under the terms of the will, they were entitled to the property devised to their father in paragraph 1 of the will, in

the amounts fixed by the section 636.32, Code, 1946, identical with section 12017, Code, 1939, to wit, the first $7500 of the estate of the testatrix, after payment of debts and expenses of administration, and one half of the remainder of the estate.

The residuary devisees and beneficiaries under the will filed answers admitting the allegations of the application of the executor, and also filed cross-petitions thereto and answers to the cross-petition of the heirs of Daniel M. Finch, deceased. These cross-petitions and answers, in substance, allege the stipulated facts, but allege also that it was the intention of the testatrix that the devise to her husband in the first paragraph of the will was contingent upon his surviving her, and that it became a nullity when he predeceased her, and that his heirs did not inherit the devise under Code section 633.16, since a contrary intent was manifest from the terms of her will, and that nothing passed to them under either section 636.5 or section 636.32 of the 1946 Code.

Paul R. and Daniel O. Finch, by replies, reaffirmed the allegations in their cross-petition to the executor's application and denied all allegations in the cross-petitions and answers of the residuary devisees, contrary thereto.

After argument orally and in writing the cause was taken under advisement by the court, and on August 22, 1947 the court entered of record its rulings on evidence, findings of fact, conclusions of law and judgment. It sustained all objections of the sons of Daniel M. Finch to the offers of stipulated facts noted above. It found the facts as stipulated, and as undenied in the pleadings.

The court set out eleven propositions in its "Conclusions of Law." We note those of which appellants chiefly complain: 2. Paul R. Finch and Daniel O. Finch are the sole heirs of Daniel M. Finch and as such are entitled to receive the part of the estate of Bertha D. Finch devised to Daniel M. Finch by paragraph 1 of her will under the provisions of section 633.16, Code, 1946, unless from the terms of the will a contrary intent is manifest. The residuary legatees have failed to meet their burden of establishing that such contrary intent was manifest. 6. There is no intent contrary to the provisions of the antilapse statute manifest from the terms of the will of the

testatrix. 7. The testatrix intended that her husband should take an unconditional interest in her estate and not under the law of descent and distribution. She used the phrase "distributive share of my property as provided by the laws of Iowa" for the purpose only of measuring the extent of the devise in paragraph 1. It was not intended that the law of descent and distribution was to determine the husband's right to share in her estate because that share was given to him by the will and not by such law. 8. Paul R. and Daniel O. Finch are entitled to inherit, under Code section 633.16, the undivided one-third interest in all of the property of the estate, real and personal. 10. After payment of the debts of decedent, taxes, expenses of administration, the devise of one third of the property of the estate to Paul R. and Daniel O. Finch, and the legacies as directed in paragraph 2 of the will, the residue of the estate shall be payable as follows: one fifth each to Jesse D. Griffith, John N. D. Griffith, Simon Carey, Hetta Carey Conway, and one tenth each to Elizabeth Carey Vargas and Belle Carey McClure. 11. The court costs shall be taxed to the estate.

Judgment was entered in accord with conclusions of law.

I. Separate briefs and arguments have been filed by the appealing residuary devisees, but since the propositions, briefs and arguments are in general similar, we shall not particularize and will treat them as combined. Errors were assigned on several of the court's conclusions of law, but as stated in the brief and argument of the appellants Griffith, "there is only one question involved in this appeal; and that is whether the will of Bertha D. Finch devised any interest to her husband, who predeceased her, which could pass to his heirs."

The appellants have correctly stated and limited the question for determination. It was the judgment of the trial court that the devise in paragraph 1 of the will to the husband of the testatrix passed, under section 633.16, Code, 1946, to the heirs of the devisee—his sons by an earlier marriage, Paul R. Finch and Daniel O. Finch. We agree with the trial court.

Code section 633.16 provides:

"If a devisee die before the testator, his heirs shall inherit

the property devised to him, unless from the terms of the will a contrary intent is manifest."

As noted above, it was stipulated that the burden was upon the residuary devisees, the appellants, to establish that such a contrary intent was manifest from the terms of the will. Appellants state their burden thus:

"Appellants' contention that the devise in paragraph 1 of the will lapsed on the predecease of the devisee is based on the intent of the testatrix as manifest by the terms of the will, which must be ascertained therefrom without addition to or modification of the language employed by testatrix to express her intent. Language in the will must be construed according to its plain meaning and legal import, without consideration of extrinsic evidence on the question of intent. Under the anti-lapse statute, the test is not the *quantum* of the estate involved in a devise nor the effect of the statute not in controversy. In construing a devise, the paramount question is what was the intent of the testator as shown by the terms of the will? *In the instant case, the only devise under which the heirs of Daniel M. Finch make claim is the devise made in paragraph 1 of the will, and this is the devise whose terms are to be judicially construed.* The intent of testatrix as disclosed by the will, which may be express or implied, is controlling." (Italics supplied.)

With reference to the italicized sentence just above, we agree that the appellees claim only such property as is devised in paragraph 1, and that its terms are to be judicially construed, but we think the appellants have erred in seeking the intent of the testatrix only in that paragraph, and slighting the other paragraphs which gave property to the husband in addition to "his distributive share" devised in paragraph 1.

For reversal of the judgment, appellants chiefly rely upon Tennant v. Smith, 173 Iowa 264, 155 N. W. 267, and Herring v. Herring, 187 Iowa 593, 174 N. W. 364. They say:

"The rule which is controlling in the instant case was established in 1915 in Tennant v. Smith * * *. Since the decision in the Tennant case is decisive of the present controversy, the

vital portion of the court's opinion is quoted * * *. This court's salutary opinion in the Tennant case is a complete and effectual denial of the correctness of the trial court's judgment that the devise in controversy did not lapse and that the heirs of the predeceased devisee are entitled to inherit one third of the estate of testatrix. * * * Another case in which the rule established and applied in the Tennant case is fully and clearly set forth is Herring v. Herring 187 Iowa 593. * * * The rule established in the Tennant case controls the present controversy. The rule set forth in the Herring case is identical with the rule applied in the Tennant case."

In the Tennant case the bequest from the wife to her husband which was in litigation was: " 'I give and bequeath to my husband, Jonathan Duncan, such share of my estate as he is entitled to have and receive under the laws of the state of Iowa.' "

In the Herring case the bequest involved was:

" 'I give, and bequeath to my husband, Peter Rohret, all that share or part of my estate, real, personal and mixed, which would go to him under the statute of distribution of this state, if I should die intestate, neither desiring to increase nor curtail his said distributive share or interest in my estate, but intending to leave him to take just so much as the law gives to a surviving husband in cases of intestacy.' "

In each of the cases noted the husband was willed no property or benefits other than that bequeathed in the quoted provisions. The property bequeathed in each provision was exactly, both in quantity and quality, what each husband would have received had his wife died intestate. In each case, as said in In re Estate of Warren, 211 Iowa 940, 944, 234 N. W. 835, 837:

"* * * the estate would pass, not under the will, but under the 'worthier title' by descent; and that the devise and bequest is a nullity, ineffective, and void. [Citing authorities.] * * * In 6 Greenleaf's Cruise on Real Property, Title 38, Chapter 8, Section 2, the author states:

" 'With respect to the first sort of devises that are void *ab initio,* it is a rule of law that, where a testator makes the *same disposition of his estate as the law would have done,* if he had been silent, the will, being unnecessary, is *void.'* * * *

"In Wheeler v. Loesch, 51 Ind. App. 262 (99 N. E. 502), we find the following pronouncement:

" 'So a will which makes no other disposition of property than the law would make is a nullity, and *not subject to contest.'* "

All parties hereto concede, and the trial court found, that the worthier-title rule has no application to the case before us. The rule was applied in the Tennant case and in the Herring case. Because they were worthier-title cases, what was stated and found therein has no application in this case. Appellants in a reply argument state: "In the Tennant and Herring cases, this court held that the terms of the devise in each case manifested an intent that in case of the predecease of the devisee, the devise should lapse." There is no doubt that the court so held in each case. But such holding in those cases does not help the appellants in the case at bar. The fact that this court so held in those cases is not important, but the reason for such holding is important. Appellants do not mention the reason. It is clear from the opinion in the Herring case that the reason the devises in that case and in the Tennant case were held to manifest an intent contrary to the antilapse statute was that the devise in each case was identical with what the devisee would have taken by descent. They were worthier-title cases. The court through Evans, J., in the Herring case said at pages 595, 596 of 187 Iowa, page 365 of 174 N. W.:

"We think our holding in that case [Tennant v. Smith] is quite determinative of this * * *. Do the terms of the devise under consideration herein permit the heirs of the predeceased devisee to take the devise, or do they manifest a 'contrary intent?' We think it clear from the *terms* of *this devise* that the testatrix *intended* to add nothing to the legal rights of the devisee." (Italics supplied.)

That the reason for holding the devises in the Tennant and

Herring cases in themselves indicated an intent contrary to the antilapse statute was the identity in the devises and what the devisees would have taken under the statutes of descent and distribution, also clearly appears in the opinion in. In re Estate of Davis, 204 Iowa 1231, 1233, 1234, 213 N. W. 395, 396, where the court, through EVANS, C. J., said:

"In the Tennant case we first applied the foregoing rule [worthier-title] to a devise by one spouse to another. Such application of the rule was followed in the Herring case. * * * In order to bring the case within this rule, it is essential that the provision for the surviving spouse under the will should be identical in quantity and quality with the statutory provision to the same end. If such respective provisions be identical in the given case, then the beneficiary would be deemed to take under the statute, as conferring the 'worthier title,' and the provision of the will would be deemed nugatory or canceled thereby. *Such identity of provision is deemed sufficient evidence of an intent on the part of a testator that the devise should lapse if the spouse should predecease him.*" (Italics supplied.)

It is this "identity of provision" in the terms of the will which makes manifest the "contrary intent" stated in the antilapse statute. The same thought was repeated by WAGNER, J., in In re Estate of Warren, supra, 211 Iowa 940, 949, 234 N. W. 835, 839, in speaking of the devisee:

"Her rights in the property under the will were at all times identical with her rights under the law. As said in In re Estate of Davis, 204 Iowa 1231: 'Such identity of provision is deemed sufficient evidence of an intent on the part of a testator that the devise should lapse if the spouse [mother] should predecease him.'"

Following the italicized quotation above noted in In re Estate of Davis, the opinion continues: "The question presented was last before us in In re Will of Watenpaugh, 192 Iowa 1178." After quoting the devises in the Tennant and Herring cases, the opinion states:

"We construed each of the foregoing provisions as being identical with the statutory provisions, and that it awarded to

the devisee neither more nor less than he was entitled to under the statute, and that the devise lapsed upon the death of the devisee before that of the testator. In the Watenpaugh case the testator devised to his wife property greater in quantity and substantially different in quality than she would have taken under the statute. *We held the rule contended for as not applicable, and that the devise did not lapse.*

"In the case before us there is no provision in the will which indicates any intent that the devise should lapse in the event of the death of the devisee before that of the testator, *unless it can be said that the testamentary provision in her behalf and the statutory provisions are identical.* The district court held that they were not identical, and awarded the devise to the heir of Sarah [the predeceased devisee and wife of the testator]." (Italics supplied.)

This court held that the decisions in the Tennant case and the Herring case did not rule the case before it, since the worthier-title doctrine was the controlling factor in each of said cases, and had no application in the Davis case where there was lack of identity between the devise and the heritable estate. The decision in In re Will of Watenpaugh, 192 Iowa 1178, 186 N. W. 198, was followed; and the judgment in the Davis case, that the devise did not lapse, was affirmed.

In the case before us the devise in paragraph 1 of the will designated the gift as the devisee's distributive share under the laws of Iowa, but decidedly unlike those cases (Tennant and Herring), Bertha D. Finch, in addition to the devise in paragraph 1 of what would have been her husband's distributive portion had she died intestate, directed her trustee to pay to her husband the income from the residue of her estate during his life, with additional payments from the corpus of the trust if his needs required them. There was no identity in quantity or quality in the testamentary disposition to him and what he would have received under the statutes of descent and distribution had she left no will.

The testamentary disposition in In re Will of Watenpaugh, supra, 192 Iowa 1178, 1179, 1182, 186 N. W. 198, 199, was quite similar to that of Mrs. Finch. In the cited case the

testator in item 2 of his will gave to his wife in lieu of her dower and distributive share, " 'an equal undivided one third of all the property both real and personal of which I may die seized or possessed, to have and to hold the same to her, her heirs, personal representatives and assigns forever.' " In addition thereto, in item 4 of his will he gave her the income from the remaining two thirds of his estate during her life and widowhood. After discussing Tennant v. Smith and Herring v. Herring, both supra, and McAllister v. McAllister, 183 Iowa 245, 167 N. W. 78, in affirming the decree of the trial court holding that the devise of one third of the estate to the wife did not lapse but passed to her heirs, the court, by FAVILLE, J., said:

"It is apparent that, in the Tennant case and in the Herring case, the bequest was expressly limited to the exact amount which the beneficiary would have received under the laws of descent. The language of the bequest in each case expressly provides, in effect, that it is the intention to bequeath the identical share provided by the statutes of the state. *In the instant case, however, we find more in the will than in either of the wills in the cited cases.* This will, like all other wills, must be construed in its entirety, and when so construed, we find that, in addition to the second item of the will, under the fourth item of the will the testator gives to his wife the use of the undivided two thirds of all his real and personal property during her natural life, or so long as she should remain his widow. Had the widow survived her husband, she would have taken an undivided one third of all of his property, and, in addition thereto, she would have taken the use of the remaining two thirds of his property for the term of her natural life, or during her widowhood." (Italics ours.)

In the Herring case the court found the identity of provision was sufficient evidence of contrary intent on the part of the testatrix, while in the Davis case the court found lack of identity and also lack of a contrary intent. Justice EVANS wrote both opinions. In the Watenpaugh case, quite on "all fours" with the one on appeal, the court found lack of identity in the

devise and the statutory share, and necessarily found there was no "contrary intent manifest" by the terms of the will. In the later decisions of this court the fact is stressed that the "contrary intent" found in the Tennant case and in the Herring case was based upon the identity of the devise and the distributive share in each case. In In re Estate of Schroeder, 228 Iowa 1198, 1206, 293 N. W. 492, 496, we said:

"However, the rule in reference to the 'worthier title', which we applied in each of those cases, was applicable *only* because the devise was *exactly* the same as the distributive share of the spouse." (Italics supplied.)

In In re Estate of Everett, 238 Iowa 564, 567, 28 N. W. 2d 21, 22, speaking through GARFIELD, J., the court said:

"We have said the fact that the will makes the identical provision for the spouse or heir the law makes in event of intestacy is deemed sufficient evidence of the testator's intent that the devise should lapse if the beneficiary predecease him. [Citing the Tennant, Herring, and Warren cases, all supra.] * * * The rule of such decisions does not apply unless the provision of the will is identical in quantity and quality with the statutory provision to the same end." Citing In re Will of Watenpaugh, In re Estate of Davis, both supra; Wehrman v. Farmers & Merchants Sav. Bk., 221 Iowa 249, 254, 259 N. W. 564; In re Estate of Sheeler, 226 Iowa 650, 663, 284 N. W. 799.

Under the decisions of this court the devises in controversy in the Tennant and Herring cases were ineffective and of no validity. Such a devise in In re Estate of Warren, supra, 211 Iowa 940, 949, 234 N. W. 835, 839, was said to have been "at all times void, ineffective, and a nullity." Had the devisee in the Tennant case or the Herring case survived the testator he would have taken the property devised, not under the will, but under the statute. It cannot be said that the devise in paragraph 1 of the Bertha D. Finch will was "nugatory or canceled" in the language of the Davis case, supra. And the appellants concede that had Daniel M. Finch survived the testatrix he would have taken the property under

the will, and not under the statutes of descent and distribution.

In discussing the antilapse statute, it was said in In re Estate of Hulett, 121 Iowa 423, 425, 96 N. W. 952, 953, and repeated in McAllister v. McAllister, supra, 183 Iowa 245, 248, 167 N. W. 78; In re Will of Watenpaugh, supra, 192 Iowa 1178, 1180, 186 N. W. 198; In re Estate of Mikkelsen, 202 Iowa 842, 844, 211 N. W. 254, and in Jensen v. Nelson, 236 Iowa 569, 576, 19 N. W. 2d 596, that it was enacted "so as to preserve the devise to a greater or less extent for the benefit of persons who would presumably have enjoyed the benefits of such devise had the devisee survived the death of the testator and died immediately afterward." The judgment of the trial court in this case in holding that the devise did not lapse but passed to the sons of the devisee effected a result in full accord with the purpose of the statute. It must be presumed that the testatrix had knowledge of the statute when she made her will, and knew that if she survived her husband the property devised would pass to his heirs—presumably the two boys who came under her care when she married their father—unless she manifested a contrary intent by her will. Downing v. Nicholson, 115 Iowa 493, 497, 88 N. W. 1064, 91 Am. St. Rep. 175; In re Estate of Everett, 238 Iowa 564, 569, 28 N. W. 2d 21, 23; Mason v. Mason, 194 Iowa 504, 511, 188 N. W. 685; In re Estate of Schroeder, 228 Iowa 1198, 1207, 293 N. W. 492. She made no such express manifestation in her will, and we find none by implication or inference. She died on the hundredth day after her husband's death and yet she made no change in her will with respect to paragraph 1 thereof. As said in In re Estate of Davis, supra, 204 Iowa 1231, 1236, 213 N. W. 395, 396:

"It were simple to have made the devise to the wife conditional upon her survival, if such were the intent. It were likewise simple to have added a brief codicil to the will after her death, if such were necessary to express the final intention of the testator. Sufficient to say that the decree of the district court was obedient to the terms of the will."

See, also, like language in In re Estate of Everett and In re Estate of Schroeder, both supra. Approximately two weeks before her husband's death she executed the codicil to her will and said therein, "All provisions of said will shall remain in full force and effect, except as modified by this codicil."

The antilapse statute has been a part of the Code of 1851 and all succeeding Codes. Its purpose was to end the common-law rule that a devise to one whose death occurred before the death of the testator lapses. The courts of the state have consistently given the statute a broad and liberal construction to effect that purpose. Downing v. Nicholson, supra, 115 Iowa 493, 495-497, 88 N. W. 1064, 91 Am. St. Rep. 175.

If the testatrix had intended to nullify the devise to her husband in the event he died before her death she could have added to the devise the words "if he survives me." This court in refusing to add these words in Mason v. Mason, supra, 194 Iowa 504, 507, 188 N. W. 685, 686, said:

"This, we think, we are not authorized to do. We may construe a will, but we cannot properly assume to make one for the testatrix, or to insert therein conditions not fairly expressed by herself."

The trial court was right in holding that the appellants had failed to carry the burden incumbent upon them that the will by its terms manifested an intent that the devise in paragraph 1 of the will should lapse in the event the devisee therein died before the testatrix.

II. The heirs of Daniel M. Finch contend that the statement made in the Tennant and Herring cases, that a contrary intent was manifest in the will involved in each, was dictum. We do not agree with the contention. The question of "contrary intent" is always an issue when the antilapse statute is involved. It was involved in each of the cases. The court simply held that the identity of the devise and the distributive share was sufficient evidence of such intent. In the Herring case, 187 Iowa 593, 594, 174 N. W. 364, the court stated both issues, to wit, "The argument, therefore, has two phases: (1) Was the devise a nullity from the beginning? (2) Did the will, by its terms, evince the intention that, in

the event of the death of Peter before the testatrix, the devise should lapse?" The court answered both questions, but held that the affirmative answer to the first was sufficient evidence that the answer to the second must be affirmative. What. was said was not a mere opinion of its writer, but was the adjudication of the court on a point within the issues.

"* * * where a case presents two or more points, any one of which is sufficient to determine the ultimate issue, but the court actually decides all such points, the case is an authoritative precedent as to every point decided, and none of such points can be regarded as having merely the status of a dictum." 21 C. J. S., Courts, 309, 315, section 190.

See, also, State ex rel. Bailey v. Brookhart, 113 Iowa 250, 256, 257, 84 N. W. 1064; Perfection Tire & Rubber Co. v. Kellogg-Mackay Equipment Co., 194 Iowa 523, 530, 187 N. W. 32; Galvin v. Citizens Bank, 217 Iowa 494, 498, 250 N. W. 729; Waddell v. Board of Directors, 190 Iowa 400, 402, 175 N. W. 65.

III. Appellants assign error because the court sustained objections to their offer of certain parts of the fact stipulation. The assignment is . without merit. The facts that the residuary legatees were related by consanguinity to the testatrix and her relations with them were cordial and that the bulk of her estate came from her mother and not from her husband carry no weight in the determination of the case. As said in In re Estate of Everett, supra, 238 Iowa 564, 569, 28 N. W. 2d 21, 23: "The 'contrary intent' to which section 633.16 refers must be manifest 'from the terms of the will.'" To the same effect see In re Estate of Davis, supra, 204 Iowa 1231, 1236, 213 N. W. 395, 396, and In re Estate of Schroeder, supra, 228 Iowa 1198, 1207, 1208, 293 N. W. 492. In the Davis case the court said in a like situation: "But speculations of that kind are not permissible to the courts. The language of the will must be their sole guide."

IV. Paul R. Finch and Daniel O. Finch, as cross-appellants, challenge the judgment of the district court because it limits the amount which they inherit to a one-third interest in all the .property of the estate, as provided in section 636.5,

Code, 1946, instead of awarding them the first $7500 of the estate, after payment of the debts of the decedent and the administration expense, and one half of the residue above $7500, as provided in section 636.32, Code, 1946.

Section 636.5 is as follows:

"Dower. One-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him. *The same share of the real estate of a deceased wife shall be set apart to the surviving husband.* [C51,§§ 1394, 1421; R60, §2477; C73, §2440; C97, §3366; C24, 27, 31, 35, 39, §11990]" (Italics supplied.)

Section 636.32 is:

"Absence of issue. If the intestate leaves no issue, the whole of the estate to the amount of seventy-five hundred dollars, after the payment of the debts and expenses of administration, and one-half of all of the estate in excess of said seventy-five hundred dollars shall go to the surviving spouse and the other one-half of said excess shall go to the parents. * * *. [C51, §1410; R60, §2495; C73, §2455; C97, §3379; S13, §§3379, 3381-a; C24, 27, 31, 35, 39, §12017]"

Section 636.1, Code, 1946, provides that "the personal property of the deceased not necessary for the payment of debts, nor otherwise disposed of, shall be distributed to the same persons and in the same proportions as though it were real estate."

Section 636.7 provides that "the *distributive share* of the survivor shall be set off so as to include the ordinary dwelling house * * *. [C51, §1395; R60, §2426; C73, §2441; C97, §3367; C24, 27, 31, 35, 39, §11992]" (Italics supplied.)

Cross-appellants rely chiefly upon Marvick v. Donhowe, 191 Iowa 214, 215, 182 N. W. 182, 183, a suit in equity to construe the will of S. H. Marvick. He was survived by his widow and no issue. The widow was the plaintiff, and the defendants were nieces and nephews of the testator. Marvick

devised to his wife " 'that part of my estate which the laws of Iowa provide for a wife's equity.' " He also gave to her the income of the residue of the estate during her life or widowhood. The antilapse statute was not involved. The trial court construed the will as entitling the widow to an amount equal to what she would have received under section 3379, Code Supplement, 1913, had her husband left no will. In affirming this holding of the court, this court said:

"The two propositions submitted to this court on this appeal are: (1) What did the widow take, under the language of the will that she should have 'that part of my estate which the laws of Iowa provide for a wife's equity?' (2) * * *

"He [testator] was unacquainted with the technical statutory provisions (which he was presumed to know) governing a case like his own, but he did know that the laws of Iowa made some provision for a surviving spouse, and, with this uncertain information, and being a long distance from home and away from his legal and other confidential advisers [he drew this holographic will]. * * *

"What do the laws of Iowa provide under such circumstances?

"Section 3366 of the Code gives to the surviving widow, *as her distributive share,* one third in value in fee of all the legal and equitable estates of which the husband died seized; and, in the event that the husband leaves no issue, section 3379 of the Supplement to the Code, 1913, gives to the widow $7500, after the payment of the debts and expenses of administration, and one half of all the estate in excess of said amount. (Italics supplied.)

"The law favors such a construction of a will as most nearly conforms to the statutory rule of descent and distribution. Applying this presumption in the instant case, if there is any doubt or uncertainty as to what portion of the testator's estate he intended to give his wife, we must resolve that doubt in her favor, and give her all to which she would have been entitled, had the husband died intestate. See Ellsworth College v. Carleton, 178 Iowa 845. * * *

"The ruling of the trial court in construing the instant will in this particular is correct."

See, also, Murdoch v. Bilderback, 125 Mich. 45, 83 N. W. 1007, cited in the opinion.

The phraseology of the devise was that of a layman and not in the language of the statute, yet his intention was clear. The judgment of the court was a logical and reasonable determination of that intent. But the decision falls short of sustaining the contention of the cross-appellants. The opinion, on its face, in stating that Code section 3366 gave to the surviving widow "as her distributive share, one third in value" of the husband's estate, definitely indicates that had the will devised her such share, as does the Finch will, the court would have construed the devise as giving to her but one third of the estate.

Cross-appellants also cite In re Estate of Schroeder, supra, 228 Iowa 1198, 1206, 293 N. W. 492, which they state "appears" to pass on the question. This is an overstatement. In that case the testator devised all his estate not needed to pay his debts and administration expense to his wife, who predeceased him. We held that the decree exceeded what she would have received under the statutes of distribution had he died prior to her death leaving no will, and affirmed a judgment awarding the devise to her heirs. We said that if her husband had died intestate and she had survived him she would have received under section 12017, Code, 1935, the first $7500 and one half the excess. That was merely a statement of what the section provided. It was not an adjudication, and, of course, the statute needed no adjudication. The decision in the case is of no aid to the cross-appellants.

The devise in each of the cases relied upon by them is entirely different from the testamentary disposition under consideration. In the instant case the testatrix designated the devise to her husband in paragraph 1 of the will as "his distributive share of my property as provided by the laws of Iowa." The words are plain and simple. The only matter for determination is, What is such "distributive share?" The cross-appellees (residuary devisees) say that it is the one third under

section 636.5, Code, 1946 (section 11990, Code, 1939). The cross-appellants (heirs of Daniel M. Finch) say it is the $7500 and half the excess under section 636.32, Code, 1946 (section 12017, Code, 1939). The cross-appellants have offered little to sustain their contention. We agree with the statement of the cross-appellees that "a 'distributive share' of a [surviving] spouse is a legal phrase of definite and ascertainable meaning, employed time and time again in the statutes of this state to describe the surviving spouse's one third or 'dower' interest, familiar to all judges and members of the bar, appearing repeatedly in the opinions of this court, the digests of its decisions, and the textbooks on probate law."

The term is not expressly defined in the statutes of the state but its repeated use in all of the Codes leaves no question or doubt as to its meaning. It has never been used to designate the share or interest passing under said section 636.32 or under any of its predecessor sections. Section 636.5, Code, 1946, is in substance the same as it appeared in section 1394 of the Code of 1851, and successively in all the later Codes. It was in section 2440 of the Code of 1873 that the estates of dower and curtesy were expressly abolished. As Justice BECK said in Mock v. Watson, 41 Iowa 241, 243, 244:

"Our statute expressly abolishes the estate of dower, and creates another estate to take its place. Code, §2440. For the newly created estate the legislature has supplied no name. The widow takes 'one-third in value' * * *. Though no name be given this estate, the profession, finding it inconvenient to speak or write about a thing without a name, will discover a fit term by which to designate it. * * * Whatever effect the legislation abolishing the estate [dower] may have * * * it is quite certain that the use of the word will not be dispensed with."

Evidence that the eminent Justice was also a true prophet appears from the repeated use of the word "dower" in the section catchwords in the chapter (636) on "Descent and Distribution" in the 1946 Code.

But in section 2441, Code, 1873 (section 636.7, Code, 1946)

the new estate was given a name by the words "the distributive share of the survivor shall be set off" to include the dwelling house given by law to the homestead. In Smith v. Zuckmeyer, 53 Iowa 14, 16, 17, 3 N. W. 782, 784, the court said:

"Sec. 2455 [Code, 1873, section 636.32, Code, 1946] : 'If the intestate leave no issue, the one-half of his estate shall go to his parents and the other half to his wife.' * * * In Burns v. Keas, 21 Iowa 257, it was held that upon the death of the wife, without issue, the husband is entitled to but one-half of her entire estate, *for dower and as heir at law.* That case arose under section 2495 of the Revision of 1860, which was identical with section 2455 of the Code. The effect of the rule is that in determining the share of the husband under section 2455 the *one-third* or *distributive share,* or *dower interest, must first be taken out, and to that must be added such a fraction of the residue as would make one-half, which would be one-sixth.* It would seem that the 'distributive share,' or 'widow's share,' is plainly described in sections 2440 and 2441, as the one-third. But if this were not enough the other provisions of the statute indicate that one-third is such share. The widow holds the one-third exempt from the debts of the husband. * * * Her right to one-third cannot be affected by any will of the husband. Code, section 2452. It shall be so set off as to include the ordinary dwelling house * * *. Section 2441. It attaches to all real estate of the husband possessed at any time during marriage * * *. Section 2440. These and other characteristics of the 'widow's share' are applicable to the one-third of the estate and no more. All, excepting this one-third, the husband can dispose of by will, and it is liable for his debts, and the debts of the wife, without being set off and assigned to her. *Whatever is inherited over and above one-third is taken and held as an heir at law under section 2455.*" (Italics supplied.)

Before section 3379, Code of 1897 was amended by chapter 280, section 1 of the Thirty-fifth General Assembly as it now appears in the first sentence of section 636.32 of the Code of 1946, the surviving spouse took one half of the estate of the deceased spouse, dying without issue. In construing said sec-

tion 3379 the court in Monroe v. Servis, 179 Iowa 583, 585, 586, 161 N. W. 653, 655 (Evans, J.), said:

"The one-half interest awarded under the statute to the widow in the absence of issue is intended to include her one-third distributive share. Her legal distributive share, however, remains one third, as before. The additional one sixth which she takes under the provisions of Section 3379, Code, 1897, she takes as an heir, and not otherwise. If the decedent had died testate, she would take such additional interest subject to the will; she takes it subject to the debts of the decedent, and likewise subject to his contracts." (Citing cases.)

For other decisions of this court pointing out the differences and distinctions between dower and curtesy of the surviving spouse, and the "distributive share" of the surviving spouse under section 636.5, Code of 1946 and its predecessor sections in earlier Codes, and the share which passes to the surviving spouse under the conditions designated in section 636.32, Code of 1946 and its predecessor sections, see Burns v. Keas, 21 Iowa 257; Linton v. Crosby, 54 Iowa 478, 6 N. W. 726; Ruppin v. McLachlan, 122 Iowa 343, 347, 98 N. W. 153; Hays v. Marsh, 123 Iowa 81, 85, 98 N. W. 604; In re Estate of Noble, 194 Iowa 733, 735, 190 N. W. 511, 26 A. L. R. 86; Schultz v. Schultz, 183 Iowa 920, 167 N. W. 674; Wilcke v. Wilcke, 102 Iowa 173, 183, 71 N. W. 201; Kuhn v. Kuhn, 125 Iowa 449, 454, 101 N. W. 151, 2 Ann. Cas. 657; Boyles v. Cora, 232 Iowa 822, 847, 6 N. W. 2d 401; Phillips v. Carpenter, 79 Iowa 600, 44 N. W. 898; Wright v. Breckenridge, 125 Iowa 197, 201, 101 N. W. 111; Purcell v. Lang, 97 Iowa 610, 66 N. W. 887; Ditson v. Ditson, 85 Iowa 276, 52 N. W. 203; Ward v. Wolf, 56 Iowa 465, 9 N. W. 348.

Under the whole record it appears to the court that the testatrix used and intended to use the term "distributive share" in the sense in which it has uniformly been used in the statutes and by this court, as meaning the one-third share passing to the surviving spouse under section 636.5 of the 1946 Code, identical with section 11990 of the 1939 Code in effect at the time she executed her will. The trial court was right in so holding.

The motion of the appellants and the cross-appellees to

strike a part of the Reply Brief and Argument of the appellees and cross-appellants which was submitted with the appeal is denied.

The judgment of the district court is affirmed on each appeal. The costs are taxed to the estate.—Affirmed.

All JUSTICES concur.